Daniele GILLUND, Plaintiff-Appellant,

v.

MERIDIAN MUTUAL INSURANCE COMPANY,
State Automobile Mutual Insurance Company
and Harleysville Insurance Company,
Defendants-Respondents,

Terry PFEIFFER, Defendant-Co-Appellant.

Court of Appeals

*No. 2008AP1301. Submitted on briefs August 11, 2009.
—Decided December 1, 2009.*

2010 WI App 4

(Also reported in 778 N.W.2d 662.)

1

4

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul D. Peterson* of *Harper & Peterson PLLC*, of Woodbury, MN, with *Roger L. Kramer* of *Kramer & Short, LLC, pro hac vice*, of Mendota Heights, MN.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *David A. Ray* of *First Law Group SC*, of Stevens Point.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert L. McCracken* and *Jacqueline Lorenz Sehloff* of *Nash, Spindler, Grimstad & McCracken LLP*, of Manitowoc.

Before Brown, C.J., Anderson and Brennan, JJ.

¶ 1. BRENNAN, J. Daniele Gillund appeals from two circuit court orders: (1) granting summary judgment to Meridian Mutual Insurance Company ("Meridian") and State Automobile Mutual Insurance Company ("State Automobile"); and (2) granting summary judg-

ment to Harleysville Insurance Company ("Harleysville"). The circuit court concluded that none of the three homeowners' insurance policies covered the claimed personal injury to Gillund. We agree that there is no coverage under the Meridian and State Automobile policies and, therefore, affirm that circuit court order. But we conclude that the circuit court's order regarding coverage under the Harleysville policy must be reversed and remanded, because Harleysville's failure to file any pleading and its filing of improper affidavits make summary judgment analysis impossible.

## BACKGROUND[1]

¶ 2. From 1999 until the fall of 2001, Gillund periodically stayed with her aunt and uncle, Nancy and Terry Pfeiffer, at the Pfeiffers' residence in Menasha, Wisconsin. Thereafter, when the Pfeiffers moved to Hurley, Wisconsin, Gillund occasionally stayed with them there. At other times between 1999 and 2001, Gillund stayed with her grandmother in Park Falls, Wisconsin. Gillund claims in her complaint that during the time that she stayed with the Pfeiffers, Pfeiffer "surreptitiously and without notice to Plaintiff, took videos, photographs, computer generated images, and other images of Plaintiff either fully unclothed or at

[1] The background facts are gleaned from the record and the parties' briefs. We note, however, that Gillund's statement of facts does not provide a single citation to the record, in violation of WIS. STAT. RULE 809.19(1)(d) (2007–08). But to the extent that none of the parties appear to challenge her statement of facts and those facts are necessary to decide the matters before us, we accept them here as true.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

6

various states of undress." Gillund claims that the videotaping and photographs were taken without her knowledge and consent; in places she had a clear expectation of privacy, such as her bedroom and bathroom; and that they caused her damages.

¶ 3. In July 2005, prior to when Gillund filed this tort case, Pfeiffer was charged in Winnebago County Circuit Court with four counts of the criminal offense of Making a Visual Representation of Nudity, contrary to Wis. Stat. § 944.205(2)(a) (1999–2000), for videotaping Gillund between July 13, 1999 and September 1, 2001. The facts at issue in the criminal case are the same at issue in the civil suit before this court. Pfeiffer admitted at his deposition that he was guilty of the offenses charged in the criminal complaint. The charges were dismissed by the circuit court in October 2005 based on the assistant district attorney's motion informing the court that the statute on which the charges were based had been ruled unconstitutional in 2000, in *State v. Stevenson*, 2000 WI 71, 236 Wis. 2d 86, 613 N.W.2d 90.[2]

¶ 4. The assistant district attorney stated in her motion that the State had considered three other possible criminal charges against Pfeiffer, but concluded that none were then prosecutable. First, the State considered charging Pfeiffer with Wis. Stat. § 942.09 (2001–02), the legislature's re-creation of the unconstitutional Wis. Stat. § 944.205(2)(a) (1999–2000). But because the effective date of § 942.09 was December 2001, the statute was enacted too late to cover Pfeiffer's actions.

¶ 5. The assistant district attorney's motion further explained that the State also considered charging

---

[2] We note that Gillund's briefs cite only to the Northwest Reporter in violation of SCR 80.02 (2008).

7

Pfeiffer with WIS. STAT. § 942.08 (1999–2000), Invasion of Privacy, but the charge was a misdemeanor and the statute of limitations for misdemeanors, three years, had run by the time the assistant district attorney discovered the unconstitutionality of WIS. STAT. § 944.205(2)(a) (1999–2000). *See also* WIS. STAT. § 939.74(1) (1999–2000).

¶ 6. Finally, the State considered charging WIS. STAT. § 948.12 (1999–2000), Possession of Child Pornography, but could not proceed with that charge because the State lacked the required proof that Gillund was a minor when the images were taken, and the State did not believe it could fairly characterize the images of Gillund as being sexually explicit. Accordingly, the assistant district attorney moved for dismissal of all charges against Pfeiffer with prejudice, and the circuit court granted the motion in October 2005.

¶ 7. On December 19, 2005, Gillund filed a complaint in Winnebago County Circuit Court against both Pfeiffers and "XYZ Insurance Company" based on Pfeiffer's conduct. She later dismissed the claim against Nancy Pfeiffer. The Pfeiffers answered Gillund's complaint in January 2006, admitting that they resided at the address listed in Menasha, Wisconsin from 1999 through the fall of 2001, and that Gillund stayed with them at that address. They also admitted that in 2001 they moved to Hurley, Wisconsin, and that Gillund stayed with them there periodically.

¶ 8. Meridian answered in March 2006 that it was "XYZ Insurance Company." Meridian's answer contained: general denials, a counterclaim, a cross-claim for declaratory judgment that Gillund's claims were not covered by its policy due to intentional acts exclusions, and a request for dismissal of the claims against Meridian. Meridian later amended its answer, counterclaim,

8

and cross-claim for declaratory judgment, alleging that the true identity of "XYZ Insurance Company" was Meridian, for a policy of insurance in effect from August 15, 2000 through August 15, 2001, and State Automobile for a policy of insurance in effect from August 15, 2001 through June 28, 2002. Meridian again requested a declaratory judgment that neither insurance policy provided coverage to Gillund on her claims, due to exclusions, and requested a dismissal of Gillund's claims against both Meridian and State Automobile. Gillund filed no responsive pleading. Meridian also filed a motion to bifurcate the coverage issue and to stay proceedings on the merits until such time that coverage was resolved.

¶ 9.   In May 2006, Harleysville filed a motion to intervene, to bifurcate the coverage from liability, and to stay the liability proceedings. Harleysville did not file any pleading with the motion to intervene. Harleysville stated in the motion that it had provided a policy of homeowner's coverage to the Pfeiffers under its former name, Lake States Insurance Company, from March 1, 1999 to March 1, 2000.

¶ 10.   In May 2006, the circuit court granted Harleysville's motion to intervene and ordered liability issues bifurcated from coverage issues, staying discovery on all liability issues. The parties stipulated to, and the circuit court ordered, the inclusion of Harleysville as a defendant in the caption in September 2007.

¶ 11.   Meridian and State Automobile filed a motion for summary judgment and declaratory judgment, accompanied by a supporting brief and affidavit in February 2008. Gillund filed a brief but offered no evidence or affidavit in opposition to this motion. At a summary judgment hearing before the circuit court, Meridian and State Automobile argued that Gillund's

claims were not covered because both policies: (1) only provide liability coverage for damage caused by an "occurrence," which the policies defined as "an accident"; (2) excluded coverage for intentional acts; and (3) excluded coverage for violations of the penal law. Gillund argued that Meridian and State Automobile's reliance on the intentional acts exclusion was eliminated by an endorsement that explicitly lists invasion of privacy as a covered personal injury, and she further argued that the penal law violation exclusion did not apply because the State had dismissed all of the criminal charges against Pfeiffer. The circuit court agreed with Meridian and State Automobile and granted their motion for summary judgment and declaratory judgment, finding that the penal law violation exclusion prohibited coverage for Gillund's claims. The court then dismissed all claims against Meridian and State Automobile.

¶ 12. Harleysville moved for summary judgment in January 2008. Attached to the motion were a supporting brief, an affidavit from Harleysville's attorney, and a document entitled "Memorandum of Fact." The affidavit, which was notarized, consisted of four paragraphs simply stating that: (1) a certified copy of the Harleysville policy was attached; and (2) copies of the certified transcripts of the entire depositions of the Pfeiffers and Gillund, totaling approximately 200 pages, were attached. The "Memorandum of Fact" contained factual averments that were signed by Harleysville's attorney but that were not notarized.

¶ 13. At a hearing on Harleysville's motion for summary judgment, Harleysville argued that its policy did not cover Gillund's claims because the facts showed that Gillund was a resident-insured at the Pfeiffers' residence during their coverage period of 1999–2000

10

and under the clear exclusions of the Harleysville policy, the policy does not provide personal injury coverage to an insured. Pfeiffer argued that a material factual dispute existed on the issue of Gillund's residency during the policy period. The circuit court granted Harleysville's motion for summary judgment, making a factual finding that Gillund was a resident-insured at the Pfeiffers' residence during the policy period, and that, therefore, the Harleysville policy did not provide liability coverage for Gillund's claims against Pfeiffer because Gillund fell within the exclusion for personal injury to a resident-insured. Gillund appeals both orders granting summary judgment to Meridian and State Automobile, and Harleysville.

## DISCUSSION

## I. The Meridian and State Automobile policies do not provide coverage for Gillund's claims.

¶ 14.    The first part of this appeal involves the construction of two homeowners' insurance policies, issued by Meridian and State Automobile, and requires us to determine whether the policies provide coverage for Gillund's claim that Pfeiffer caused her injury when he invaded her privacy. The two policies contain identical language regarding the pertinent terms, exclusions, conditions, and limitations on appeal. Gillund first argues that the amendment to the Meridian and State Automobile policies that expressly grants coverage for "Invasion of Privacy" directly contradicts the policies' definition of an "occurrence" as "an accident." Because the terms within each policy conflict, she argues that coverage for "Invasion of Privacy" is illusory and that the policies should be construed against the insurers to provide coverage. Secondly, Gillund argues

11

that the policy exclusion for violations of the penal law does not deny coverage here because Pfeiffer was not convicted of a crime.

¶ 15. Meridian and State Automobile first respond that the policies are neither ambiguous nor are the terms of the policies inconsistent, because an invasion of privacy can be accidental. Accordingly, they contend that the coverage granted for invasion of privacy is not illusory, and because Pfeiffer's conduct was not an accident, Gillund's claim is not covered. Secondly, Meridian and State Automobile argue that coverage for Gillund's claim is excluded because Pfeiffer's conduct violated the penal law and is therefore excluded from coverage under the policies. They argue that the exclusion for violations of the penal law encompasses *any* violation of a penal law, regardless of whether those violations resulted in prosecution or conviction. We conclude that Pfeiffer's conduct violated the penal law under the policies' terms, prohibiting Gillund's claim against Meridian and State Automobile.

¶ 16. We review grants of summary judgment independently of the circuit court. *Doyle v. Engelke,* 219 Wis. 2d 277, 283, 580 N.W.2d 245 (1998). We first review the pleadings to determine whether a claim for relief has been stated. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 317, 401 N.W.2d 816 (1987). "If a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist." *Id.* at 315.

¶ 17. It is undisputed that Pfeiffer intentionally and secretly videotaped and photographed Gillund in the nude and stages of undress in places where she had a reasonable expectation of privacy, namely her bedroom and bathroom, without her knowledge and con-

12

sent. Pfeiffer was charged in a criminal complaint in Winnebago County Circuit Court with four counts of Making a Visual Representation of Nudity, a violation of WIS. STAT. § 944.205(2)(a) (1999–2000), for videotaping Gillund naked in the bathroom and in her bedroom between July 13, 1999 and September 1, 2001. At his deposition, Pfeiffer admitted that he was guilty of the charges and said he intended to capture images of Gillund nude. The parties dispute only whether there is coverage under the policies as a matter of law. Where there are no material factual disputes, we determine whether the movant is entitled to summary judgment as a matter of law. *Doyle*, 219 Wis. 2d at 283.

¶ 18. "Insurance policies are interpreted as they would be by a reasonable person in the position of the insured." *Brown County v. OHIC Ins. Co.*, 2007 WI App 46, ¶ 11, 300 Wis. 2d 547, 730 N.W.2d 446. Words in a policy should be given their common, everyday meaning. *Paape v. Northern Assurance Co. of Am.*, 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App. 1987). But "[r]esort to a recognized dictionary may be had in order to discern the plain meaning." *Holsum Foods Div. of Harvest States Coops. v. Home Ins. Co.*, 162 Wis. 2d 563, 569, 469 N.W.2d 918 (Ct. App. 1991). "Words and phrases are ambiguous when they are susceptible to more than one reasonable construction." *Link v. General Cas. Co. of Wisconsin*, 185 Wis. 2d 394, 399, 518 N.W.2d 261 (Ct. App. 1994). "Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer." *Id.*

¶ 19. "Whether an insurance contract is illusory is a question of law." *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 268, 500 N.W.2d 354 (Ct. App. 1993), *superseded on*

*other grounds by statute,* WIS. STAT. § 632.32(5)(i), *as recognized in Sukala v. Heritage Mut. Ins. Co.,* 2000 WI App 266, ¶ 15, 240 Wis. 2d 65, 622 N.W.2d 457. We review questions of law independently of the circuit court. *Id.* Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision. *See Link,* 185 Wis. 2d at 401 (discussing illusory coverage in relation to an uninsured motorist provision). Where coverage is illusory, we have concluded that the contract should be reformed so that it comports with the insured's reasonable expectations. *See Hoglund,* 176 Wis. 2d at 272.

¶ 20.   The Meridian and State Automobile homeowners' policies contain identical language in the pertinent sections. The policiess each define an "occurrence" as "an accident."[3] Additionally, both the Meridian and State Automobile policies contain an endorsement, entitled "PACEMAKER® PLUS HOMEOWNERS ENDORSEMENT," that amends the policy. *See Lisowski v. Hastings Mut. Ins. Co.,* 2009 WI 11, ¶ 21, 315 Wis. 2d 388, 759 N.W.2d 754 ("[A]n endorsement is 'a provision added to an insurance contract altering its scope or application that takes precedence over printed portions of the policy in conflict therewith.' ") (citation omitted). The "PACEMAKER® PLUS" endorsement language amends coverage:   (1) by making a specific grant of coverage for personal injury caused by the "offense" of

---

[3] The policy states as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage."

14

"Invasion of Privacy"[4]; and (2) by amending the exclusions to exclude coverage for injury caused by a violation of a penal law committed by an insured.[5]

¶ 21.   Gillund argues that the endorsement's express grant of coverage for invasion of privacy contradicts the definition of "occurrence" as "an accident" because an invasion of privacy must be intentional. She argues that this contradiction creates an ambiguity in the policies, which requires us to construe the policies against the insurers and grant coverage because the policies' provision is illusory. *See Link*, 185 Wis. 2d at 401.

¶ 22.   Even if we agreed with Gillund's contention that the grant of coverage for invasion of privacy

---

[4] With regard to personal liability, the exclusion states as follows:

**A.** Under **Coverage E – Personal Liability**, the definition of "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, or malicious prosecution;

2. Libel, slander or defamation of character; or

3. *Invasion of privacy,* wrongful eviction or wrongful entry.

(Emphasis added.)

[5] With regard to the penal law, the exclusion states as follows:

**Section II Exclusions** do not apply to "personal injury." "Personal injury" insurance does not apply to:

. . . .

2. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured[.]"

contradicts the policies' definition of an "occurrence" as "an accident," and even if we deemed that the coverage grant is therefore illusory and construed the policy to grant Gillund coverage for an invasion of privacy, we still have to address whether the exclusion for a violation of a penal law operates to deny Gillund coverage. Because we conclude that the penal law exclusion is dispositive of all the issues on appeal, we will assume, without deciding, that the coverage grant for invasion of privacy is illusory because it contradicts the policies' definition of an "occurrence" as "an accident," and we will address the dispositive issue of whether the exclusion for a violation of a penal law denies coverage for Gillund's claim despite coverage for invasion of privacy.

¶ 23.    The penal law endorsement excludes from coverage "[i]njury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an 'insured.' " Gillund argues that:    (1) the exclusion does not apply because Pfeiffer was not *convicted* of a violation of the penal law and could not be prosecuted for any crime; and (2) the penal law endorsement is ambiguous because it contradicts the grant of coverage for invasion of privacy, and accordingly, the policies' grant of coverage for invasion of privacy is illusory. Meridian and State Automobile respond that the exclusion for a penal law violation does not require conviction and that the policies' coverage for invasion of privacy does not contradict the exclusion for penal law violations. We agree with Meridian and State Automobile.

¶ 24.    We first address whether Pfeiffer's conduct violated a penal law within the meaning of the policies' language. We give words in an insurance policy their plain meaning. *See Kremers-Urban Co. v. American*

*Employers Ins. Co.*, 119 Wis. 2d 722, 731, 351 N.W.2d 156 (1984). The commonly understood meaning of a penal law is a criminal law. "Penal" is defined in BLACK'S LAW DICTIONARY 1168 (8th ed. 2004), as "[o]f, relating to, or being a penalty or punishment, especially for a crime." BLACK'S defines "violation" as "[a]n infraction or breach of the law, a transgression." *Id.* at 1600. Violation is the noun form of the verb, violate; therefore, it is the *act of violating* the criminal law that the plain language of the policies exclude, not the *result* of the violation, namely the conviction. Because the policies do *not* say that they exclude coverage for conviction of a penal law, but rather exclude coverage for a violation of a penal law, we conclude that application of the policies' exclusion does not require conviction or prosecution.

¶ 25.  No party disputes the assistant district attorney's statement that Pfeiffer's conduct violated the Wisconsin criminal statute for invasion of privacy in effect at the time Pfeiffer videotaped Gillund, WIS. STAT. § 942.08(2) (1999–2000). Section 942.08(2) states:

> **(2)** Whoever knowingly installs a surveillance device in any private place, or uses a surveillance device that has been installed in a private place, with the intent to observe any nude or partially nude person without the consent of the person observed is guilty of a Class A misdemeanor.

In its motion to dismiss the criminal charges against Pfeiffer, the State explained that it could have prosecuted Pfeiffer for this crime if the assistant district attorney had noticed the error in charging WIS. STAT. § 944.205(2)(a) (1999–2000) before the three-year statute of limitations applicable to misdemeanors ran out. *See* WIS. STAT. §§ 942.08(2) and 939.74(1) (1999–2000).

¶ 26. Although she does not dispute the fact that Pfeiffer's conduct violated WIS. STAT. § 942.08(2) (1999–2000), Gillund argues that the exclusion does not apply because Pfeiffer was not convicted. However, as we have noted above, the policies' language does not require conviction or prosecution. The issue presented by the policies' language is simply whether Pfeiffer's conduct violated § 942.08(2). It did. The elements of invasion of privacy under WIS. STAT. § 942.08(2), as set forth in WIS JI—CRIMINAL 1392 (2009), are:

1. The defendant knowingly (installed a surveillance device in a private place) (used a surveillance device that had been installed in a private place).

2. The defendant intended to use the surveillance device to observe any nude or partially nude person.

3. The defendant intended to observe a nude or partially nude person without the consent of that person.

Pfeiffer has admitted to violating each of these elements. And therefore, his conduct is a violation of penal law.

██

¶ 27. Next, Gillund argues that coverage under the policies for invasion of privacy is illusory because the exclusion for violations of the penal law contradicts the express grant of coverage for invasion of privacy. We have defined an illusory contract as one where " 'a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances.' " *Link*, 185 Wis. 2d at 400 (citation omitted). Gillund asks us to determine whether *any* foreseeable set of circumstances exist where Meridian and State Automobile would be required to provide coverage for an invasion of

privacy that does not violate a penal law. If no such circumstances exist, the contract is illusory. Expressed differently: can a civil invasion of privacy occur that does not violate a criminal law? We conclude that it can.

¶ 28. Although we have assumed, without deciding, that an invasion of privacy cannot be committed accidentally, we now address whether an invasion of privacy can be just a civil cause of action and not a violation of the penal law. Even if both civil and criminal invasions of privacy encompass intentional acts (as we have assumed here), not all intentional acts encompassed by civil statute violate the criminal law.

¶ 29. By comparing the elements of a civil invasion of privacy to those necessary to establish a criminal invasion of privacy, it becomes possible to foresee a civil invasion of privacy that does not violate the criminal law and that would therefore be covered under the policies. Wisconsin first recognized the civil tort claim for invasion of privacy in 1977 with the passage of WIS. STAT. § 895.50. *See Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 928–29, 440 N.W.2d 548 (1989); *see also* 2005 Wis. Act 155, § 51 (renumbering § 895.50 to WIS. STAT. § 995.50). WISCONSIN STAT. § 995.50(2)(a)–(d),[6] describes four types of invasion of privacy that are civilly

---

[6] WISCONSIN STAT. § 995.50, addressing civil liability for an invasion of privacy, states as follows:

**Right of Privacy. (1)** The right of privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief:

(a) Equitable relief to prevent and restrain such invasion, excluding prior restraint against constitutionally protected communication privately and through the public media;

(b) Compensatory damages based either on plaintiff's loss or defendant's unjust enrichment; and

(c) A reasonable amount for attorney fees.

actionable in Wisconsin. The one most applicable to this case is Wis. Stat. § 995.50(2)(a), which requires proof of an "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." The test is an objective one: whether a reasonable person would find the intrusion highly offensive. There is no requirement that the actor have a particular mental state or intent.

¶ 30. The criminal invasion of privacy statute, on the other hand, requires proof of a specific intent. Wisconsin Stat. § 942.08(2),[7] lists a number of prohibited intrusions, each of which requires the defendant to

(2) In this section, "invasion of privacy" means any of the following:

(a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

(b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

(d) Conduct that is prohibited under [Wis. Stat. §] 942.09, regardless of whether there has been a criminal action related to the conduct, and regardless of the outcome of the criminal action, if there has been a criminal action related to the conduct.

[7] For clarity, we note that although when previously discussing Wisconsin's criminal statute for invasion of privacy we referenced Wis. Stat. § 942.08(2) (1999–2000), here we compare

act with a specific intent or state of mind. For example, in § 942.08(2)(a), an invasion of privacy requires the defendant to install a surveillance device "with the intent to observe any nude or partially nude person." Section 942.08(2)(b) through (d) each require that the defendant have the "purpose of sexual arousal or gratification." On the other hand, the civil statute, WIS. STAT. § 995.50(2)(a), does not require a defendant to act with a particular state of mind. The civil statute merely requires the plaintiff to demonstrate that the invasion of privacy is "highly offensive to a reasonable person." Because a civil invasion of privacy can exist where the intrusion is "highly offensive to a reasonable person" but where there is no intent to observe someone nude or to engage in sexual arousal or gratification, there are foreseeable circumstances under which an individual could violate the civil statute but not violate the criminal statute.

¶ 31. It becomes even more evident that an invasion of privacy does not necessarily implicate the exclusion for violations of penal law when WIS. STAT. § 995.50(2)(c) is compared with the criminal statutes. Section § 995.50(2)(c) describes a different type of invasion of privacy, public disclosure of private matters. Under WIS. STAT. § 995.50(2)(c), giving publicity to a person's life, in a manner that is "highly offensive to a reasonable person" and without reasonable regard to whether there is a "legitimate public interest" in the information is an actionable violation of invasion of privacy under the civil statutes. However, there is no corresponding criminal statute for this type of intrusion. The closest would be Wisconsin's defamation statute, WIS. STAT. § 942.01, but that differs in that it requires the

the 2007–08 version of the statute to its counterpart in civil law.

specific intent to defame and the absence of truth. Accordingly, it is foreseeable that there could be an invasion of privacy under § 995.50(2)(c) that is not prohibited by the policy exclusion for violations of the penal law.

¶ 32. Because we find that Wisconsin's civil statute provides coverage to invasions of privacy that are not covered by Wisconsin's criminal statute, Meridian's and State Automobile's policies provide coverage for invasion of privacy that is foreseeable and not illusory.

¶ 33. Gillund, in a supplemental brief, cites several cases from other jurisdictions where courts have found invasion of privacy coverage illusory. *See Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1384–85 (Md. 1997) (holding policy was ambiguous in covering an invasion of privacy while excluding personal injury expected or intended by insured); *Missouri Prop. & Cas. Ins. Guar. Ass'n v. Petrolite Corp.*, 918 S.W.2d 869 (Mo. Ct. App. 1996) (holding policy covered intentional employment discrimination despite definition of an occurrence as "unexpected and unintentional"), *overruled on other grounds by Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156 (Mo. 2007). However, we find each case presented by Gillund unpersuasive because each found invasion of privacy illusory based upon contradictions between the grant of coverage for invasion of privacy and an exclusion for intentional acts. We assumed, without deciding, that the policies at issue here were also illusory for the same reasons. The cases Gillund attempts to draw parallels to are distinguishable because they do not include the policy exclusion before us for "violations of a penal law." This difference compels a different result. Accordingly, based on the limited facts before us, we conclude that there is no coverage on

22

Gillund's claim because Pfeiffer's conduct was clearly a violation of Wisconsin penal law.

## II. Harleysville's procedural failures require reversal of the grant of summary judgment to it.

¶ 34. Harleysville argues in its summary judgment motion that its policy does not provide coverage to Gillund based upon an invasion of privacy because Gillund was a resident-insured under the policy during the relevant time period, and the policy excludes personal injury coverage to an insured. Pfeiffer responds that material factual issues exist as to whether Gillund resided in the home covered by the Harleysville policy during the relevant time period and that the circuit court erred when it made a factual finding on motion for summary judgment that Gillund was residing in the home at that time, especially when it did so in opposition to the non-moving party.

¶ 35. We review summary judgment orders independently of the circuit court. *See Doyle*, 219 Wis. 2d at 283. We begin by determining whether the plaintiff has stated a proper claim for relief by reviewing the parties' pleadings. *Green Spring Farms*, 136 Wis. 2d at 317. Then the inquiry shifts to a review of the supporting affidavits to see whether a material factual dispute exists. *See* Wis. Stat. § 802.08(2). Under § 802.08(2), summary judgment must be entered " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Green Spring Farms*, 136 Wis. 2d at 315 (citing Wis. Stat. § 802.08(2)).

¶ 36. We cannot apply the summary judgment analysis here because Harleysville never filed any pleading in this matter. Pursuant to Wis. Stat. § 803.09(3), a pleading must be filed with the motion to intervene:

> A person desiring to intervene shall serve a motion to intervene upon the parties as provided in [Wis. Stat. §] 801.14. The motion shall state the grounds therefor and *shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.*

(Emphasis added.) Pleading is defined in Wis. Stat. § 802.01:

> **Pleadings allowed; form of motions. (1)** Pleadings. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross claim, if the answer contains a cross claim; a 3rd-party complaint, if a person who was not an original party is summoned under [Wis. Stat. §] 803.05, and a 3rd-party answer, if a 3rd-party complaint is served. No other pleading shall be allowed, except that the court may order a further pleading to a reply or to any answer.

And § 802.02(1) requires a pleading or supplemental pleading to contain:   (a) "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleading is entitled to relief"; and (b) "[a] demand for judgment for the relief the pleader seeks." No pleading was ever filed by Harleysville. Therefore, coverage under the Harleysville policy was never put in issue. Without a pleading from Harleysville, we cannot examine the pleadings to determine if factual issues exist between the parties. *See Green Spring Farms*, 136 Wis. 2d at 317.

24

¶ 37. Even if we could somehow go forward without a pleading from Harleysville, we could not accomplish the next step in the summary judgment analysis —examination of the supporting affidavits to see if a material factual dispute exists—because none of Harleysville's affidavits are in proper form. The "Memorandum of Fact" that Harleysville filed in support of its summary judgment motion was not certified or notarized by an officer of the court. And the "Affidavit of Attorney Robert Nesemann" that Harleysville filed with its summary judgment motion simply attached the policy and 200 pages of the Pfeiffers' and Gillund's deposition testimony without identifying which portions it was relying on to support its position.

¶ 38. WISCONSIN STAT. §§ 802.08[8] and 887.01(1)[9] require supporting affidavits to be notarized and to identify the specific material portions of any depositions relied upon by a party. The Wisconsin Supreme Court has called this a mandatory practice:

> Hereafter in using adverse examinations to support or refute a motion for summary judgment, the party using such adverse examination shall specify which portions of the adverse examination he deems to

---

[8] WISCONSIN STAT. § 802.08(3) states that "[s]upporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence."

[9] WISCONSIN STAT. § 887.01(1) states that "[a]n . . . affidavit required or authorized by law . . . may be taken before any judge, court commissioner . . . [or] notary public . . .; and, when certified by the officer to have been taken before him or her, may be read and used in any court and before any officer, board or commission."

25

be material and on which he relies. This practice shall be mandatory and failure to follow this practice shall constitute good cause for the [circuit] court or this court to disregard the adverse examination in appraising that party's position on the motion.

*Commercial Disc. Corp. v. Milwaukee W. Bank*, 61 Wis. 2d 671, 678, 214 N.W.2d 33 (1974). Even if we were to overlook the deficiencies in the affidavits submitted here, we cannot get past the absence of any pleading. To the extent that the circuit court overlooked both, we find the circuit court erred. Where a party files no pleading at all and where its supporting affidavits fail to conform to the statutory requirements of notarization and summary of evidentiary facts on which they rely, we have no basis for affirming the grant of summary judgment. *See id.*

¶ 39. We also note that Gillund failed to file any evidentiary affidavits in opposition to Harleysville's motion for summary judgment. Gillund filed what appears to be the same brief in opposition to all motions for summary judgment on March 5, 2008, and again on March 11, 2008. She attached unauthenticated portions of her April 25, 2007 deposition to her brief. In response to the Harleysville summary judgment motion, Gillund asserts that material factual issues exist as to whether she was a resident-insured at the Pfeiffers' residence and recites facts to support this assertion with reference to the record. But she does this within the brief and without a supporting evidentiary affidavit. Pfeiffer similarly fails to accompany his brief in opposition to Harleysville's motion for summary judgment with affidavits authenticating his deposition. We are left with no pleading from Harleysville, a certified copy of a policy, and no proper affidavits. We need not address Gillund's and Pfeiffer's failures to file proper opposing affidavits

because Harleysville's failure to file any pleading fails to properly put its summary judgment motion before the court.

¶ 40.   Although our conclusion that the procedural errors necessitate remand resolves this part of the appeal, we will address one other part of the circuit court's Harleysville summary judgment order in the interest of judicial economy. *Cf. Jackson v. Benson*, 218 Wis. 2d 835, 901, 578 N.W.2d 602 (1998) (addressing issues not raised before the circuit court in the interest of judicial economy and finality). We conclude that it was error for the circuit court to make a factual finding at summary judgment on the issue of Gillund's residency during the Harleysville policy period. "We have stated innumerable times a motion for summary judgment does not contemplate nor permit a trial upon affidavits or depositions, and that if there are any material facts in dispute or competing reasonable inferences the party resisting the motion is entitled to a trial." *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 190, 260 N.W.2d 241 (1977).

¶ 41.   The circuit court overlooked (without comment) the absence of any pleading and the improper affidavits, and accepted the depositions presented at summary judgment from all of the parties. From those affidavits, the circuit court made a factual finding that Gillund was a resident-insured under the Harleysville policy and that coverage was therefore excluded. However, we have held that the question of residency in a given household requires an inquiry into the subjective state of mind of the prospective resident, to be determined upon all of the facts. *See id.* Because the inquiry is fact-intensive, " 'the issue of . . . intent is not one that properly can be decided on a motion for summary

27

judgment. Credibility of a person with respect to his subjective intent does not lend itself to be determined by affidavit.' " *Id.* (citations omitted; alteration in *Lecus*).

¶ 42. The record here consists of the depositions of the Pfeiffers and Gillund. As noted by the parties' briefs, the depositions show facts that could lead to differing inferences and conclusions on Gillund's intent as to her residency. The Harleysville policy was in effect for the Pfeiffers' residence from August 1999 to August 2000. As an example of the material factual disputes, the depositions show the following: (1) Nancy Pfeiffer stated in her deposition that no decision was made between June and August 1999 on where Gillund would reside; (2) Gillund stated in her deposition that Pfeiffer could have taken images of her on her visits to the Pfeiffers' residence after she moved in with her grandmother in Park Falls between January and September 2000; (3) Gillund's Wisconsin driver's license listed her address as Park Falls; and (4) Gillund frequently traveled back and forth between Park Falls and the Pfeiffers' residence during the Harleysville policy period. Given the existence of material factual disputes as to Gillund's residency during the Harleysville policy period, it was error for the circuit court to decide that factual issue at summary judgment. We reverse the circuit court's grant of summary judgment to Harleysville and remand the matter to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded for further proceedings.