Jesus M. HERNANDEZ,
Plaintiff-Respondent,

v.

LIBERTY MUTUAL INSURANCE COMPANY,
Defendant-Appellant,

GEICO INDEMNITY COMPANY,
Defendant.

Court of Appeals

*No. 2013AP1286. Submitted on briefs November 5, 2013.
—Decided January 28, 2014.*

2014 WI App 36

(Also reported in 844 N.W.2d 657.)

731

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas R. Schrimpf* and *Elizabeth A. Odian* of *Hinshaw & Culbertson LLP*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jason F. Abraham* and *Joseph M. Mirabella* of *Hupy and Abraham, S.C.*, Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Liberty Mutual Insurance Company appeals from a final judgment, awarding Jesus M. Hernandez $50,000 under an excess liability insurance policy issued by Liberty. The $50,000 award came following the circuit court's decision to grant Hernandez's motion for declaratory judgment and the parties' subsequent stipulation to the $50,000 judgment.

Liberty asserts that the Other-Insurance Clause included in the Wisconsin Endorsement to the Excess Policy properly excludes certain permissive users from coverage for first utilizing the underlying Liability Policy on which coverage under the Excess Policy is contingent, thereby precluding coverage for Hernandez's injuries. We disagree and conclude that Liberty's reading of the Excess Policy and the policy's Wisconsin Endorsement renders the Wisconsin Endorsement illusory. As such, we affirm.

## BACKGROUND

¶ 2. On October 7, 2011, Hernandez was seriously injured when the motorcycle he was driving was struck by a motor vehicle driven by Anna S. Diantoni. The vehicle Diantoni was driving at the time of the accident was owned by Zipcar.

¶ 3. Zipcar is a vehicle-sharing service that offers the general public the right to reserve and use its motor vehicles, billable by the hour or day, in exchange for annual membership dues. Diantoni was a Zipcar member at the time of the accident and was authorized by Zipcar to operate the vehicle involved in the accident.

¶ 4. Liberty issued a commercial insurance policy that provides liability coverage in the amount of $300,000 for Zipcar members while operating Zipcar vehicles ("the Liability Policy"), and thereby insured Diantoni at the time of the accident. Liberty has paid out the $300,000 limit set forth in the Liability Policy to Hernandez in exchange for a partial release of claims.

¶ 5. Liberty also issued an excess liability insurance policy to Zipcar ("the Excess Policy"). Liberty denied Diantoni coverage under the Excess Policy based on the Other-Insurance Clause contained in the policy's Wisconsin Endorsement. The Excess Policy and the

Wisconsin Endorsement form the basis for the under-lying case and this appeal.

¶ 6. The declarations page of the Excess Policy specifically lists the Liability Policy as the sole under-lying policy to which the Excess Policy applies. Endorse-ment 102 to the Excess Policy states:

> It is a condition of this policy that, as respects all automobile renting activities, the insured will maintain the following minimum underlying insurance in force during the term of this policy.
>
> [The Liability Policy Number]
>
> The Policy will provide the following Limit:
>
> Liability $300,000 for any one Accident or Loss[.]

¶ 7. The Excess Policy's insuring agreement pro-vides:

> I. COVERAGE
>
> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as dam-ages and which would be payable by the company on behalf of the insured under the underlying policies, except for the provisions of the Limits of Liability conditions thereof.

In other words, the Excess Policy, by its plain language, is triggered only when the Liability Policy is applicable and has been exhausted.

¶ 8. The Excess Policy defines an "insured" as follows:

> III. *DEFINITION OF INSURED*
>
> The definition of insured in any and all underlying policies shall not apply to this policy and, for purposes of this policy, the unqualified word "insured" shall mean:

734

(1) Zipcar, Inc.

(2) Zipcar on Campus

Endorsement 102 further clarifies that:

> The words "insured" shall not include any person while using with your permission any vehicle for which insurance is provided to you under this policy, or any person or organization legally responsible for its use.

Therefore, unlike the Liability Policy, the Excess Policy was originally written to provide coverage *only* to Zipcar as a corporate entity.

¶ 9. Liberty then added the Wisconsin Endorsement to the Excess Policy, which appears at first to modify the Excess Policy's definition of an insured to include permissive users by appending Section (3) to the Excess Policy's "III. *DEFINITION OF INSURED*":

> (3) Anyone else while using an auto covered by an underlying policy, provided such use is with the permission of
>
> Zipcar, Inc. [or]
>
> Zipcar on Campus[.]

¶ 10. However, the Other-Insurance Clause in the Wisconsin Endorsement then goes on to *exclude* "persons who qualify as Insureds under Section (3) of Definition of Insured" "when there is other valid and collectible insurance":

> 5. OTHER INSURANCE
>
> . . . .
>
> The insurance provided to persons who qualify as Insureds under Section (3) of Definition of Insured

shall not apply when there is other valid and collectible insurance with at least the limits required by the Wisconsin Financial Responsibility Law, whether the other insurance is primary, excess or contingent.

Thus, the permissive users added to the Excess Policy by the Wisconsin Endorsement were then excluded by the Other-Insurance Clause.

¶ 11. Following the accident, Hernandez made a claim against Liberty under the Excess Policy for Diantoni's negligence as a permissive user of a Zipcar vehicle. Liberty denied the claim, citing the Other-Insurance Clause within the Wisconsin Endorsement. In doing so, Liberty asserted that the existence of the Liability Policy operated to exclude coverage under its Excess Policy for permissive users like Diantoni. Hernandez filed this lawsuit,[1] and the parties filed cross-motions seeking a declaration as to the availability of coverage under the Excess Policy.

¶ 12. Before the circuit court, Hernandez argued that Liberty's position—that the Liability Policy could trigger the Excess Policy's Other-Insurance Clause—must be rejected because such a reading of the clause renders coverage under the Wisconsin Endorsement illusory. Instead, Hernandez asserted that a reasonable reading of the Other-Insurance Clause would apply the clause only to other concurrent liability insurance policies.

¶ 13. Liberty countered that the Other-Insurance Clause invoked Wisconsin's omnibus statute, which permitted Liberty to restrict coverage to permissive users other than Zipcar's officers, agents, or employees when there is other valid and collectible insurance with at least the limits required by the Wisconsin Financial Respon-

---

[1] Several other parties are named in the lawsuit but their interests are irrelevant on appeal.

sibility Act. *See* WIS. STAT. § 632.32(5)(c) (2011–12).[2] Because the Liability Policy's $300,000 limit met the requirements for other valid and collectible insurance, Liberty argued that Diantoni was not covered under the Excess Policy. Liberty asserted that the Other-Insurance Clause did not render the Wisconsin Endorsement illusory because the Other-Insurance Clause did not deny excess coverage to Zipcar's officers, agents, or employees.

¶ 14. The circuit court agreed with Hernandez and granted his motion for declaratory judgment. The parties then stipulated to a final judgment against Liberty from which it could appeal as a matter of right.

## DISCUSSION

¶ 15. The issue before this court is whether Liberty's interpretation of the Other-Insurance Clause —that the underlying Liability Policy can trigger the clause's "other valid and collectible insurance" provision —creates coverage under the Wisconsin Endorsement that is illusory. We conclude that it does and affirm.

■■

¶ 16. "[T]he grant or denial of a declaratory judgment is addressed to the [circuit] court's discretion." *Gulmire v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 18, ¶ 10, 269 Wis. 2d 501, 674 N.W.2d 629. "However, when the exercise of such discretion turns upon a question of law, we review the question de novo, benefiting from the [circuit] court's analysis." *Id.* Here, the issue turns upon construction of Wisconsin's omnibus statute governing automobile insurance, WIS. STAT. § 632.32, and interpretation of the Excess Policy and the Wisconsin Endorsement. These are also questions

---

[2] All references to the Wisconsin Statute are to the 2011–12 version unless otherwise noted.

of law that we review independently. *See Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857 (insurance contracts); *Van Erden v. Sobczak*, 2004 WI App 40, ¶ 11, 271 Wis. 2d 163, 677 N.W.2d 718 (statutory interpretation).

¶ 17. When interpreting insurance policies, we construe them to give effect to the intent of the parties as expressed in the language of the policy. *Folkman*, 264 Wis. 2d 617, ¶ 12. To determine the parties' intent, we begin by analyzing the policy language to see if an ambiguity exists regarding the disputed coverage issue. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 51, 255 Wis. 2d 61, 647 N.W.2d 223. Terms in the policy are given their common and ordinary meaning. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 637, 586 N.W.2d 863 (1998). Policy language is ambiguous only "if it is susceptible to more than one reasonable interpretation." *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. Given that context, we turn to the plain language of the Excess Policy and its Wisconsin Endorsement.

¶ 18. The Excess Policy defines an "insured" as "(1) Zipcar, Inc. [and] (2) Zipcar on Campus." The policy expressly states that "[t]he definition of insured in any and all underlying polices shall not apply to this policy[.]" In other words, by the plain language of the Excess Policy, permissive users of Zipcar vehicles are not covered insureds under the Excess Policy, even though they are included as insureds in the underlying Liability Policy.[3]

---

[3] Throughout its brief to this court, Liberty contends that the Wisconsin Endorsement extends the Excess Policy's coverage to Zipcar's officers, agents, and employees. Implicit in that

¶ 19. The parties all agree that the Excess Policy's general definition of an insured violates WIS. STAT. § 632.32(3)(a). Section 632.32(3)(a) requires that "[c]overage provided to the named insured appl[y] in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy."

¶ 20. Liberty states that, in order to comply with WIS. STAT. § 632.32(3)(a), it included the Wisconsin Endorsement in the Excess Policy, which amended the policy's definition of an insured. The Wisconsin Endorsement adds to the Excess Policy's "III. *DEFINITION OF INSURED*" "(3) Anyone else while using an auto covered by an underlying policy, provided such use is with the permission of Zipcar, Inc. [or] Zipcar on Campus[.]" The parties all agree that Diantoni was using the vehicle involved in the accident with Zipcar's permission and was therefore an insured under the Excess Policy pursuant to the amended definition of an insured provided in the Wisconsin Endorsement.

¶ 21. The parties' positions on the issue of coverage under the Excess Policy begin to diverge with their interpretations of the Other-Insurance Clause included in the Wisconsin Endorsement. The Other-Insurance Clause states that:

> [t]he insurance provided to persons who qualify as Insureds under Section (3) of Definition of Insured shall not apply when there is other valid and collectible

argument is the concession that Zipcar's officers, agents, and employees are covered by the underlying Liability Policy because the parties all agree that exhaustion of the Liability Policy is a prerequisite to coverage under the Excess Policy.

insurance with at least the limits required by the Wisconsin Financial Responsibility Law, whether the other insurance is primary, excess or contingent.

Liberty denied Hernandez coverage under the Excess Policy, arguing that the underlying Liability Policy triggered the Other-Insurance Clause and thereby denied him coverage.

¶ 22. Hernandez argues that the Excess Policy's Other-Insurance Clause cannot be triggered by the underlying Liability Policy because such a reading renders the Wisconsin Endorsement illusory as no permissive user who is granted coverage under the Wisconsin Endorsement actually qualifies for coverage under the Excess Policy if collection of insurance under the Liability Policy precludes coverage. We agree.

¶ 23. WISCONSIN STAT. § 632.32(5)(c) states that:

If the policy is issued to a motor vehicle handler,[4] it may restrict coverage afforded to anyone other than the motor vehicle handler or its officers, agents or employees to the limits under [WIS. STAT. §] 344.01(2)(d) and to instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent.

In other words, § 632.32(5)(c) permits Liberty, in this instance, to exclude certain permissive users, like Diantoni, from coverage when there is "other valid and collectible insurance" available. However, § 632.32(5)(c) does *not* permit Liberty to exclude Zipcar's "officers, agents or employees" from coverage. *See id.*

¶ 24. The first problem Liberty faces is that the plain language of the Other-Insurance Clause, which it

---

[4] The parties agree that Zipcar is a motor vehicle handler under the statute. *See* WIS. STAT. § 632.32(2)(b) (defining "[m]otor vehicle handler").

drafted, acts to exclude *all* "persons who qualify as Insureds under Section (3) of Definition of Insured" in the Wisconsin Endorsement, which, as we have seen, is all permissive users. Notably, that leaves only "(1) Zipcar, Inc. [and] (2) Zipcar on Campus" as insureds. The Excess Policy fails to provide coverage for officers, agents, or employees as the statute requires. Liberty glosses over this policy omission by arguing that the statute permits the exclusion of permissive users. While that is true, the policy language must include "officers, agents [and] employees" to be permissible under WIS. STAT. § 632.32(5)(c) and Liberty has not pointed to any policy language that provides that coverage. As a result, Zipcar's "officer, agents [and] employees" are covered, if at all, by the permissive-users language in the Wisconsin Endorsement. And because the Other-Insurance Clause eliminates coverage for all permissive users, it eliminates coverage for Zipcar's "officers, agents [and] employees" in violation of WIS. STAT. § 632.32(5)(c).

¶ 25. Furthermore, Liberty's reading of the Other-Insurance Clause, applying the "other valid and collectible insurance" provision to the underlying Liability Policy, renders the Wisconsin Endorsement illusory. "Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision." *Gillund v. Meridian Mut. Ins. Co.*, 2010 WI App 4, ¶ 19, 323 Wis. 2d 1, 778 N.W.2d 662. Accepting Liberty's argument that "other valid and collectible insurance" under the Other-Insurance Clause includes the underlying Liability Policy, means that the Wisconsin Endorsement grants coverage to permissive users only to then immediately revoke that same coverage. Therefore, we must reject Liberty's reading of the Other-Insurance Clause

because " '[o]ther insurance' clauses cannot be permitted to operate to produce a total forfeiture of coverage." *See Schoenecker v. Haines*, 88 Wis. 2d 665, 672, 277 N.W.2d 782 (1979). And that is what Liberty is asking us to do here.

¶ 26. We note that the Dissent does not mention the Other-Insurance Clause at all and concludes, without discussion, that the Wisconsin Endorsement complies with WIS. STAT. § 632.32(5)(c) by not excluding "officers, agents [and] employees," a reading we see no support for. Additionally, we disagree with the Dissent's conclusion that because the Excess Policy's and Endorsement 102's general definition of an insured covers Zipcar and Zipcar, Inc., the policy is not illusory.

¶ 27. In short, Liberty cannot: (1) require Zipcar to maintain the Liability Policy to receive coverage under the Excess Policy; (2) grant all permissive users coverage in the Wisconsin Endorsement; and then (3) exclude all those same permissive users from coverage based upon coverage under the Liability Policy pursuant to the Other-Insurance Clause. To do so, in this instance, violates WIS. STAT. § 632.32(5)(c) and renders the Wisconsin Endorsement illusory. *See Gillund*, 323 Wis. 2d 1, ¶ 19.[5]

---

[5] In its brief-in-chief to this court, Liberty also "questions whether Hernandez has standing to pursue coverage under the Excess Policy on the grounds that coverage under the Excess Policy was illusory . . . [because] Ms. Diantoni was not a Named Insured on either the Commercial Policy or the Excess Policy." Hernandez responds that the direct action statute, WIS. STAT. § 632.24, grants him standing. We need not resolve the issue because Liberty raises it for the first time on appeal. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) (Issues not presented to the circuit court need not be considered for the first time on appeal.).

¶ 28. "Where coverage is illusory, we have concluded that the contract should be reformed so that it comports with the insured's reasonable expectations." *Id.* Here, Hernandez suggests that a reasonable insured reading the Other-Insurance Clause would expect the clause to only apply to concurrent liability policies, and not to the underlying Liability Policy. Such a reading of the Other-Insurance Clause puts the Excess Policy in compliance with WIS. STAT. § 632.32(5)(c) by extending coverage to Zipcar's "officers, agents [and] employees" and ensures that the Wisconsin Endorsement is not illusory. Liberty does not proffer a more reasonable interpretation of the Other-Insurance Clause. As such, we affirm the circuit court and conclude that the Other-Insurance Clause does not act to exclude coverage under the Excess Policy for Diantoni as a permissive user.

*By the Court.*—Judgment affirmed.

¶ 29. FINE, J. (*dissenting*). In my view, the provisions at issue on this appeal do not make the excess policy "illusory." Accordingly, I respectfully dissent.

¶ 30. As the Majority notes in paragraph 8, the policy and the endorsement restrict coverage to everyone but the named insureds on the excess policy: "Zipcar, Inc., and Zipcar, on Campus":

> The definition of insured in any and all underlying policies shall not apply to this policy and, for purposes of this policy, the unqualified word "insured" shall mean:
>
> (1) Zipcar, Inc.
>
> (2) Zipcar on Campus
>
> . . .

The words "insured" shall not include any person while using with your permission any vehicle for which insurance is provided to you under this policy, or any person or organization legally responsible for its use.

Majority, ¶ 8. This eliminates drivers of the Zipcar, like the injured plaintiff here, and the Majority recognizes this in paragraph 18: "[B]y the plain language of the Excess Policy, permissive users are not covered insureds under the Excess Policy, even though they are included as insureds in the underlying Liability Policy." Majority, ¶ 18.

¶ 31. WISCONSIN STAT. § 632.32(3) provides:

*Except as provided in sub. (5),* every policy subject to this section issued to an owner shall provide that:

(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.

(b) Coverage extends to any person legally responsible for the use of the motor vehicle.

(Emphasis added.) Thus, we must look to § 632.32(5) to see what in § 632.32(3) survives. Section § 632.32(5)(c) reads:

If the policy is issued to a motor vehicle handler, it may restrict coverage afforded *to anyone other than the motor vehicle handler or its officers, agents or employees* to the limits under s. 344.01(2)(d) and to instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent.

744

(Emphasis added.) This permissive restriction of the otherwise broad required-coverage grant in § 632.32(3) is conditioned on two things: (1) the restriction is to "the limits under s. 344.01(2)(d)"; and (2) those "instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent." This is precisely what the policy does here.

¶ 32. Stated another way, by virtue of WIS. STAT. § 632.32(5)(c), policies issued to motor vehicle handlers, like Zipcar here, may limit coverage to "the motor vehicle handler or its officers, agents or employees"— excluding all others (and, as we have seen, that is what the excess policy does), so long as those others have coverage under "other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent." There is such coverage for the "others" here. Accordingly, anyone other than the named insureds on the excess policy, "Zipcar, Inc., and Zipcar, on Campus," do not have coverage under the excess policy, and, because "Zipcar, Inc., and Zipcar, on Campus," have coverage under the excess policy, the excess policy is not "illusory." *See Brunson v. Ward*, 2001 WI 89, ¶ 5, 245 Wis. 2d 163, 169, 629 N.W.2d 140, 142 (A policy is "illusory" when "the insurer would never have to pay.").

¶ 33. Respectfully, I would reverse.