Robert KRECKEL and Valerie Kreckel, Plaintiffs,

TRANSCONTINENTAL INSURANCE COMPANY,
Subrogated-Plaintiff,

v.

WALBRIDGE ALDINGER COMPANY,
Defendant-Third-Party Plaintiff-Appellant,

PIEPER ELECTRIC, INC., d/b/a Mauer Electric,
and First Horizon Group Limited Partnership,
p/k/a Prime Retail Limited Partnership,
Defendants,

v.

OLYMPIC WALL SYSTEMS, INC. and CNA/National
Fire Insurance Company of Hartford,
Third-Party Defendants-Respondents.

Court of Appeals

*No. 2005AP1779. Submitted on briefs May 1, 2006.
—Decided July 19, 2006.*

2006 WI App 168

(Also reported in 721 N.W.2d 508.)

On behalf of the defendant-third-party plaintiff-appellant, the cause was submitted on the briefs of *R. Scott Ritter* of *Nada K. Sizemore & Associates*, Brookfield.

On behalf ofthe third-party defendants-respondents, the cause was submitted on the brief of *Michael R. Fitzpatrick* and *Matthew D. Kuehl* of *Brennan, Steil & Basting, S.C.*, Janesville.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J. Walbridge Aldinger Company appeals from a decision and order granting declaratory relief to Olympic Wall Systems, Inc. and CNA/National Fire Insurance Company of Hartford, essentially dismissing Walbridge's third-party claims against Olympic and CNA. The circuit court concluded that "Olympic and CNA . . . have no duty to defend, no duty to insure

---

*See Callaghan's Wisconsin Digest, same topic and section number.

and no duty to indemnify Walbridge," and dismissed the third-party complaint. Walbridge contends that the circuit court erred when it determined that Walbridge provided an untimely notice of its tender of defense to CNA and untimely notice of its indemnification claims to Olympic. In the alternative, it contends that even if notice was untimely, neither Olympic nor CNA was prejudiced by the delay. We disagree and affirm the order of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. This case originates in a negligence action against Walbridge for injuries suffered by Robert Kreckel, an Olympic employee. Walbridge was the general contractor on a construction site and had hired Olympic as a subcontractor. The agreement between Walbridge and Olympic required Olympic to obtain a general liability policy naming Walbridge as an additional insured and to indemnify Walbridge for any liability it may incur for claims arising out of work performed by Olympic. Olympic obtained coverage from CNA and included Walbridge as an additional insured.

¶ 3. On September 14, 2000, while on the job, Olympic employee Kreckel reached into an electrical transformer box and received a jolt of 15,000 volts of electricity. On February 5, 2002, Kreckel sued Walbridge for negligence.[1] Walbridge tendered defense to its general liability insurance carrier, St. Paul Fire and Marine Insurance Company, which filed an answer on March 20, 2002.

---

[1] In an amended complaint, Kreckel later added Pieper Electric, Inc., d/b/a Mauer Electric and First Horizon Group Limited Partnership, p/k/a Prime Retail Limited Partnership as defendants. Only Walbridge, Olympic, and CNA are involved in this appeal.

¶ 4. In a letter dated August 15, 2002, CNA contacted St. Paul and opined that Walbridge was the proximate cause of Kreckel's injury and demanded subrogation for money it had paid out to Kreckel as Olympic's workers' compensation carrier. Throughout the rest of 2002 and 2003, various amended pleadings were filed, parties were added, and discovery continued. In February 2004, Walbridge requested that Olympic provide it with a copy of the subcontract and information regarding Olympic's general liability insurance carrier at the time of Kreckel's injury. Olympic complied.

¶ 5. By letter dated April 6, 2004, St. Paul formally tendered Walbridge's defense to CNA. CNA acknowledged the tender of defense, responded that it was investigating the matter, and requested a copy of the summons and complaint in the negligence action. On April 29, Walbridge filed a third-party complaint against Olympic and CNA, claiming indemnification from Olympic and coverage, including the duty to defend, from CNA.

¶ 6. Olympic and CNA sought declaratory relief. Both asserted that Walbridge's tender of defense was untimely and unfairly prejudicial. A motion hearing followed, and the circuit court concluded that neither Olympic nor CNA owed any duty to defend, insure or indemnify Walbridge. Walbridge appeals.

## DISCUSSION

¶ 7. We begin by clarifying the procedural posture of this appeal. The circuit court's order references declaratory relief and dismisses Walbridge's third-party claims. The parties submitted, and the court consid-

655

ered, affidavits and accompanying documents. Furthermore, the court expressly employed summary judgment methodology in its ruling. Under these circumstances, the proceedings are reviewed as summary judgment. *See* WIS. STAT. § 802.06(2)(b) (2003–04).[2]

¶ 8. We review summary judgment de novo, applying the same method as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

¶ 9. Walbridge casts the issues on appeal in terms of the right to coverage, indemnification, and a defense. It is undisputed that Olympic agreed to indemnify Walbridge for such claims under the terms of the subcontract. It is also undisputed that CNA considers Walbridge an additional insured under the terms of its liability policy with Olympic. Thus, the only contested issues are whether Walbridge gave timely notice to Olympic and CNA, thereby invoking coverage and other duties under the subcontract and, if notice was untimely, whether the delay resulted in prejudice.

¶ 10. Whether notice is timely is a question of fact subject to the clearly erroneous standard of review. *See Neff v. Pierzina*, 2001 WI 95, ¶ 35, 245 Wis. 2d 285,

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

629 N.W.2d 177. However, decisions interpreting timely notice have held that when the insured fails to give notice within one year of the time required by the policy, "there is a rebuttable presumption of prejudice and the burden of proof shifts to the claimant to prove that the insurer was not prejudiced by the untimely notice." *Id.*, ¶ 43 (citation omitted). "Generally, whether a liability insurer has been prejudiced by late notice is considered a question of fact, but may be determined as [a] matter of law where facts are not in dispute." *Id.*, ¶ 48 (citation omitted). Here, the facts are not in dispute; rather, the parties argue as to the legal significance of those facts.

¶ 11. According to the parties, the key events in the timeline are: Kreckel's accident in September 2000; Kreckel's lawsuit against Walbridge filed in February 2002; Walbridge's tender of defense of the lawsuit to its own insurer, St. Paul, in March 2002; St. Paul's request for Kreckel's employment records from Olympic in August 2002; CNA's letter claiming a subrogation interest in August 2002; the deposition of John Huebner, an Olympic employee, in October 2002; Walbridge's request for certificates of insurance from Olympic in February 2004; and St. Paul's tender of defense to CNA on April 6, 2004. Walbridge contends that CNA and Olympic had actual notice of Kreckel's lawsuit and their potential liability as insurer and indemnifier as early as August 2002. CNA and Olympic contend that notice was not provided until April 6, 2004, and that they were prejudiced by the delay.

¶ 12. Under the terms of CNA's insurance contract, Walbridge was required to give written notice of any claim or lawsuit to CNA "as soon as practicable." Furthermore, Walbridge was required to "[i]mmediately send [CNA] copies of any demands, notices, sum-

monses or legal papers received in connection with the claim . . ." and otherwise cooperate with CNA in its investigation of the matter. Though failure to provide notice as required by the policy does not necessarily invalidate a claim, the insured must show "that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible." WIS. STAT. § 632.26(1)(b).

¶ 13. We turn to Walbridge's primary argument that timely notice was indeed given to CNA. Walbridge emphasizes that CNA employee, Francesca Clayton, referenced Kreckel's injury in a letter dated August 15, 2002. That letter explained that CNA had paid workers' compensation benefits to Kreckel and wished to protect its subrogation rights. Walbridge concludes that CNA's letter proves it had notice of Kreckel's negligence claim even before August 15, because the letter states that CNA had already evaluated the loss.

¶ 14. CNA responds that Clayton is a recovery specialist in its workers' compensation subrogation department, not in the general liability department. CNA argues that when Olympic notified CNA of the workers' compensation benefits due Kreckel, it did not absolve Walbridge of its duty to notify CNA of the negligence claim that would expose CNA under the terms of the general liability insurance contract. We agree.

¶ 15. In *Town of Mount Pleasant v. Hartford Accident and Indemnity Co.*, 2001 WI App 38, ¶ 12, 241 Wis. 2d 327, 625 N.W.2d 317, we rejected the proposition that "notice to an insurance company from one of its insureds in a multi-party lawsuit is notice from any other of its insureds in the same lawsuit." We explained that "[i]t would be an onerous burden if the insurer

(who may have thousands if not millions of insureds) is required to keep track of all of its insureds and to investigate any time it has notice of a lawsuit as to whether any of its insureds are parties." *Id.*, ¶ 13. Here, Walbridge was not the primary policyholder, but rather an "additional insured" under the policy. Moreover, CNA's knowledge of the workers' compensation claim is clear, but the record does not establish that CNA had any notice of a negligence claim until the tender of defense in April 2004. Under these circumstances, CNA was not obligated to ascertain what liability Walbridge faced or whether Walbridge wished to avail itself of the protections of CNA's general liability policy.

¶ 16. Because we conclude that Walbridge first provided notice of the negligence claim when it tendered defense to CNA and copied Olympic on the tender, we must determine whether this nonetheless constitutes timely notice. Absent a showing that it was not reasonably possible for Walbridge to provide notice sooner,[3] *see* WIS. STAT. § 632.26(1)(b), we hold that it does not. Several cases provide guidance on what manner of delay constitutes untimely notice. *See, e.g., Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 144, 277 N.W.2d 863 (1979) (twenty-two months between filing of lawsuit and notice to insurer is untimely); *Britz v. American Ins. Co.*, 2 Wis. 2d 192, 204, 86 N.W.2d 18 (1957) (unexplained delay of three months constitutes untimely notice). Here, Kreckel filed the negligence suit against Walbridge in February 2002; St. Paul tendered Walbridge's defense to CNA in

---

[3] Walbridge concedes that it would have been reasonably possible to provide notice to CNA within one year after Kreckel's lawsuit was filed.

April 2004. An unexplained and, as conceded by Walbridge, unnecessary delay of approximately twenty-six months is well beyond what the law will abide.

¶ 17. Nonetheless, failure to give timely notice does not bar liability under the policy "if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice." WIS. STAT. § 632.26(2). Walbridge asks, "[W]hat would CNA have done differently had it received notice in the spring of 2002 than it has done in this case?" It asserts that CNA has received copies of all relevant documents since they joined the litigation in 2004 and that Walbridge has "handed over its investigation, conducted through discovery . . . thereby saving CNA the time and effort of conducting any further independent investigation of its own."

¶ 18. Our supreme court rejected a similar argument in *Neff*. There, the court observed that insurers need timely notice in order to investigate the circumstances surrounding a claim while witnesses are still available and memories are fresh.[4] *Neff*, 245 Wis. 2d 285, ¶ 59. Furthermore, the insurer should have "some latitude in securing the investigator and attorney of its choice." *Id.*, ¶ 60. More recently, we echoed these concerns and observed that untimely notice may prejudice the insurer in that it cannot seek an immediate deter-

___

[4] Walbridge argues that Clayton's letter dated August 15, 2002, indicates that CNA did do an investigation well in advance of its tender of defense. We reiterate, however, that the August 15 letter addressed the worker's compensation claim. The investigation of a worker's compensation claim against Olympic is no substitution for the investigation of the negligence claim against Walbridge.

mination of coverage, it cannot participate in alternative dispute resolution efforts, and it cannot select defense counsel and control the defense. *See Mount Pleasant*, 241 Wis. 2d 327, ¶ 13 n.3. Walbridge has not overcome the presumption of prejudice; it has not produced any credible claim that CNA would have performed the same investigation, employed the same negotiation strategies, or pursued the same legal theories that St. Paul did in the first two years of pretrial litigation.[5]

¶ 19. Finally, we turn to Walbridge's argument that even if no coverage is available through CNA, it is still entitled to indemnification from Olympic under the terms of the subcontract. Walbridge argues that there was no contractual requirement that it give notice to Olympic and that, nonetheless, it did give notice. Walbridge contends that Olympic had notice in several different forms, including an employment record authorization and cover letter sent in August 2002, and "even more significantly, a subpoena to John Huebner, a management level employee, which included the actual caption of the lawsuit." Further, Walbridge points out that at Huebner's deposition on October 28, 2002, he was told of Kreckel's lawsuit against Walbridge.

¶ 20. We reject Walbridge's argument for three reasons. First, as the circuit court noted, every contract carries with it a duty of good faith and fair dealing. *See*

---

[5] Walbridge attempts to turn the burden of proof on its head by lamenting that CNA has "failed to point out a single factual example" demonstrating "actual prejudice." However, CNA is afforded a presumption of prejudice; Walbridge bears the burden of overcoming that presumption. *See Neff v. Pierzina*, 2001 WI 95, ¶ 43, 245 Wis. 2d 285, 629 N.W.2d 177.

*Wisconsin Natural Gas Co. v. Gabe's Const. Co.*, 220 Wis. 2d 14, 21, 582 N.W.2d 118 (Ct. App. 1998). A party can be liable for breach of the implied covenant of good faith "even though all the terms of the written agreement may have been fulfilled." *Id.* at 21–22 (citation omitted). One federal court observed:

> Relying upon basic principles of contract law . . . courts have found an implied obligation on the part of the indemnitee to provide reasonable notice, even when the contract does not contain a specific notice requirement. Notice of some kind is an implied condition of the indemnification contract for the simple reason that the indemnitor cannot defend or indemnify in connection with a claim that it does not know about.

*West Bend Co. v. Chiaphua Indus., Inc.*, 112 F. Supp. 2d 816, 826 (E.D. Wis. 2000) (citations omitted). The duty to provide prompt or reasonable notice is rooted in the duty of good faith and fair dealing, which in Wisconsin is part of every contract. *See Wisconsin Natural Gas*, 220 Wis. 2d at 21. Reminiscent of our discussion above, fairness here "requires prompt notice so that an indemnitor may not only respond to a claim, but also protect its interests as the party ultimately paying the bill." *West Bend*, 112 F. Supp. 2d at 827. Failure to provide reasonable notice breaches the implied condition of the contract and forfeits the right to indemnification. *Id.*

¶ 21. Second, we are not persuaded that any of Walbridge's actions prior to February 2004 demonstrated actual or constructive notice to Olympic that it faced potential liability in Kreckel's negligence lawsuit against Walbridge. We agree with the circuit court's assessment that the August 1, 2002 request for employment records did not inform Olympic of any potential liability that Walbridge was expecting it to fulfill or alert Olympic to the fact that it may be expected to pay

"thousands of dollars to indemnify Walbridge for their negligence." Likewise, Huebner's subpoena and subsequent deposition serve only to show that Huebner knew that Kreckel had initiated a lawsuit against Walbridge. Notably, the fact that Olympic did not provide Huebner with legal representation at his deposition suggests that Olympic was not on notice that a potential claim was looming.

¶ 22. Finally, the subcontract provided Walbridge the method by which notice was to be given. The subcontract states: "Any notice required to be given or which may be given to [Olympic] pursuant to this Subcontract shall be forwarded in writing, by personal delivery or by certified mail, return receipt requested, to [Olympic]." None of the incidental events relied upon by Walbridge complied with the notice methods agreed upon by the parties.

## CONCLUSION

¶ 23. We conclude that Walbridge did not provide timely notice of the negligence claim to CNA and Olympic, which resulted in prejudice and relieved CNA and Olympic of their duties to defend, insure and indemnify Walbridge. Accordingly, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.